[Cite as *State v. Cole*, 2014-Ohio-233.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

STATE OF OHIO                                  :

    Plaintiff-Appellee                      :               C.A. CASE NO.    2013 CA 18

v.                                             :               T.C. NO.    12CR352B

MICKEY S. COLE                                 :               (Criminal appeal from
                                      Common Pleas Court)

    Defendant-Appellant                     :

                                           :

. . . . . . . . . .

## O P I N I O N

Rendered on the _____24th_____ day of _____January_____, 2014.

. . . . . . . . . .

EMILY E. SLUK, Atty. Reg. No. 0082621, Assistant Prosecuting Attorney, 201 W. Main Street, Troy, Ohio 45373
      Attorney for Plaintiff-Appelle

CHERYL L. COLLINS, Atty. Reg. No. 0085671, P. O. Box 10504, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

**{¶ 1}** Mickey S. Cole was found guilty by a jury of breaking and entering and theft of a motor vehicle. At sentencing, the trial court merged the offenses and

sentenced Cole to 17 months in prison on the theft. Cole appeals from his conviction, raising five assignments of error. For the following reasons, the trial court's judgment will be affirmed.

### I. Sufficiency and Weight of the Evidence

{¶ 2}   Cole's first, second, and third assignments of error state:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT ON THE CHARGE OF BREAKING AND ENTERING.

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT ON THE CHARGE OF THEFT.

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 3}   When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. *State v. Sheppeard*, 2d Dist. Clark No. 2012 CA 27, 2013-Ohio-812, ¶ 51. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 4}   When reviewing whether the State has presented sufficient evidence to

support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). In conducting a sufficiency-of-the-evidence analysis, the reviewing court should consider all of the evidence admitted at trial, whether erroneously or not, and double jeopardy does not bar retrial where "trial error" resulted in the improper admission of evidence. *State v. Brewer*, 121 Ohio St.3d. 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 17-20. *Contrast State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 16. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Dennis* at 430.

{¶ 5} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 6} Because the trier of fact sees and hears the witnesses at trial, we must defer

to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id*. The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 7} The State's evidence at trial reveals the following facts:

{¶ 8} At approximately 1:50 a.m. on September 17, 2012, Piqua Police Officers Sean Stein and Todd Voskuhl responded, in separate cruisers, to a trespassing complaint at Lucky's Bar on Main Street in Piqua. When Officer Stein arrived, Cole was already walking away, and his brother, Johnny, was talking to the bartender. After Stein talked briefly with Johnny, Johnny joined Cole, and the two walked southbound on Main Street. Johnny was intoxicated, but neither he nor Cole was cited by the officers.

{¶ 9} Roland Sourmail owns Sourmail's Auto Sales, located on South Street in Piqua, approximately 8/10 of a mile southwest of Lucky's. Sourmail sells cars on the front portion of his property, and he rents the back portion to an individual who repossesses automobiles. The entire property was surrounded by a chainlink fence with two metal gates. Sourmail testified that he did not give anyone permission to be on his property on September 17, 2012.

{¶ 10} Once per month, repossessed vehicles are auctioned in the rented portion of

the lot, and the cars remain at the lot until the purchasers retrieve them. In September 2012, approximately 40 or 50 vehicles were in the back portion of the lot, and some of the dealers routinely left the keys in the vehicles. One of the vehicles in the lot was a gray 2007 Pontiac Torrent, which was purchased at auction by Trojan City Auto Sales and left in the back portion of Sourmail's lot. "T/ City" was written on the windshield of the Torrent, showing that Trojan City had purchased the vehicle at the auction. Michael Stoltz, general manager for Trojan City, testified that he did not give anyone permission to use or drive the Torrent.

{¶ 11} At 2:35 a.m. on September 17, Roland Sourmail was awakened by the sound of a crash. He looked out the window of his residence, which was located across the street from his business, and saw that the framing of the metal gate to the Sourmail's Auto Sales property was bent upward; the chainlink portion of the gate was detached and on the ground. Sourmail called 911. Officer Voskuhl responded within a few minutes; Officer Stein arrived a few minutes later. Sourmail and the officers observed near the gate a roof rack that appeared to be from an SUV and a broken metallic gray piece that appeared to be from a bumper or some part of a vehicle. Voskuhl radioed other officers of a possible stolen gray SUV.

{¶ 12} The officers stayed until approximately 2:55 a.m. Within a couple minutes, Officer Voskuhl observed a gray SUV with recent damage "matching the damage that appear to be caused by running through a fence." The SUV had extensive scratches along the front and sides and top, and it was missing a gray roof rack. The vehicle did not have a front or rear license plate, which led Officer Voskuhl to believe that the vehicle was not properly

registered. Voskhul activated his emergency lights and initiated a traffic stop. When the SUV stopped several blocks later, Cole was found to be driving the vehicle and his brother was in the front passenger seat. Both men were arrested and transported to jail. While Officer Stein transported Cole to jail, Cole told the officer that he had gotten the keys from a female "crackhead" and that the keys were in the ignition when he got it.

{¶ 13}  Cole did not offer any witnesses in his defense.

{¶ 14}  The breaking and entering statute provides, in part, that "[n]o person shall trespass on the land or premises of another, with purpose to commit a felony." R.C. 2911.13(B). The theft statute states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; * * *." R.C. 2913.02(A)(1).

{¶ 15}  On appeal, Cole emphasizes that there was no direct testimony that he was the individual who allegedly trespassed on Sourmail's property and stole the Torrent. Cole further argues that, even assuming he was the individual who entered the property, there was no evidence that he lacked permission to do so. Cole asserts that the evidence merely demonstrates that he possessed stolen property (the Torrent) when he was stopped by Officer Voskuhl approximately 20 minutes after the theft.

{¶ 16}  Upon review of the evidence, we find that the State presented sufficient evidence to support Cole's convictions, and that the jury did not lose its way in finding him guilty of breaking and entering and theft of a motor vehicle. First, the State's evidence established that the individual who entered Sourmail's property and took the vehicle acted

without privilege. Stoltz, the general manager of Trojan City Auto Sales, the purchaser of the Torrent at auction, testified that he did not give permission to anyone to take the vehicle from Sourmail's property. Sourmail also testified that he did not give anyone permission to enter the property at 2:30 a.m., that the property had "no trespassing" signs, and that the "wrecker drivers" who had permission to enter the back portion of the property had keys to the gate. Considering that the metal gate was severely damaged when the perpetrator crashed through the gate to leave with the SUV, the jurors could reasonably infer that the person who entered Sourmail's property did not have a key and was not authorized to be there.

{¶ 17} Second, we find sufficient evidence to support the jury's conclusion that Cole was the individual who trespassed on Sourmail's property and committed the theft. Approximately 45 minutes before the break-in and theft, Officers Stein and Voskuhl saw Cole and his brother heading southward on Main Street, away from Lucky's Bar and in the general direction of Sourmail's Auto Sales, which was less than a mile away. Sourmail heard the crash at his property at 2:35 a.m. Although Officers Stein and Voskuhl disagreed about the length of time that it would take to walk from Lucky's to Sourmail's Auto Sales (Stein thought 30 minutes, whereas Voskuhl thought 12-15 minutes), both officers' estimates would have permitted Cole to walk to Sourmail's property and steal a vehicle by 2:35 a.m. Officer Voskuhl concluded his investigation at Sourmail's Auto Sales at 2:55 a.m. Within a minute or so, Voskuhl observed the damaged Torrent a few blocks from Sourmail's and initiated a traffic stop; Cole was driving the vehicle. Based on the relatively short period of time between the theft and Cole's apprehension in the vehicle, the jury could

have reasonably inferred that the driver of the Torrent had also stolen it.

{¶ 18} In summary, the jury's guilty verdicts on the breaking and entering and theft charges were based on sufficient evidence and were not against the manifest weight of the evidence. Accordingly, Cole's first, second, and third assignments of error are overruled.

## II. Evidentiary Matters

{¶ 19} Cole's fourth assignment of error states:

THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING THE OFFICERS TO TESTIFY AS TO THE ORIGIN OF THE DAMAGE TO THE MOTOR VEHICLE AND IN PERMITTING THE STATE TO PLAY A VIDEOTAPE OF THE ARREST OF APPELLANT AND APPELLANT MAKING "VULGAR" STATEMENTS.

{¶ 20} In his fourth assignment of error, Cole claims that the trial court erred in allowing a videotape of his arrest and his subsequent "vulgar" statements to be played for the jury. He also claims that Officer Voskuhl should not have been permitted to testify as to the source of the damage to the Torrent.

{¶ 21} First, Cole claims that the trial court committed plain error when Officer Voskuhl testified, without objection, that the damage to the SUV "appeared to be fresh damage from a chainlink fence." The officer stated that his opinion was based on "common sense and looking at it would clearly show that it [the SUV] was crashed through a gate." Cole asserts that the damage was not something within a layperson's knowledge and that Officer Voskuhl's testimony was not permitted under Evid.R. 701.

{¶ 22} Evid.R. 701 states: "If the witness is not testifying as an expert, the witness'

testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Officer Voskuhl was testifying as a lay witness, but his testimony was based on his personal observation of both the damaged gate and the damaged SUV. The officer made clear that his opinion was based on common sense, not his experience as a police officer. Further, the State submitted numerous photographs of both the damaged gate and damaged vehicle, and the jury could have determined for itself whether the officer's conclusion was reasonable. We find no plain error in the admissibility of Voskuhl's testimony regarding the source of the SUV's damage.

{¶ 23} Second, Cole claims that the trial court committed plain error when it allowed the jury to view, without objection, a video of Cole's "felony arrest," which involved the officers' approaching the vehicle with their weapons drawn. Cole asserts that the prejudicial nature of the video outweighed its probative value.

{¶ 24} During Officer Voskuhl's direct testimony, the State played a cruiser video (without objection) showing Voskuhl's driving away from Sourmail's Auto Sales, his short pursuit of the SUV, and Cole's arrest. The video, which had no audio, reflected that Voskuhl pursued the SUV to an intersection that was partially blocked by Officer Stein's cruiser; the SUV stopped along the curb before reaching Stein's cruiser. Officer Stein exited his cruiser and circled around to Officer Voskuhl's cruiser. The officers stood to the side and to the rear of the SUV. Officer Voskuhl, with his weapon drawn, apparently ordered Cole to show his hands and then to exit the vehicle. Cole's hands can be seen

sticking out of the driver's side window, and then he exited the car and laid down on the ground. Officer Stein handcuffed Cole and helped him to his feet. Cole can be seen talking toward someone on the passenger side of the vehicle (off-screen), but there is nothing indicating that his conduct concerned Officer Stein. After another officer arrived, Cole was placed in Officer Stein's cruiser.

{¶ 25} While the video was played for the jury, Officer Voskuhl narrated what occurred during the stop. He explained that he performed "what's called a felony traffic stop which we do in these situations where we draw our weapons and order the suspect out of the vehicle for our safety." Officer Stein had previously testified, without the video, that the officers had conducted a "felony stop on the vehicle," that there was nothing unusual about Cole's arrest, and that Cole was "fairly cooperative."

{¶ 26} Relevant evidence is generally admissible whereas irrelevant evidence is not. Evid.R. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, even relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 402; Evid.R. 403(A). Decisions regarding whether relevant evidence is unduly prejudicial are within the broad discretion of the trial court. *See State v. Wilson*, 2d Dist. Montgomery No. 24577, 2012-Ohio-3098, ¶ 73; *State v. Conner*, 5th Dist. No. 2007AP60035, 2008-Ohio-4042, ¶ 29.

{¶ 27} The video of Officer Voskuhl's stop of the Torrent and of Cole's arrest was

relevant to show how quickly Voskuhl observed the SUV after leaving Sourmail's Auto Sales, the condition of the vehicle, and that Cole was the driver of the vehicle. Although the arrest reflected that the officers approached the vehicle with their weapons drawn, Officer Stein testified that there was nothing unusual about Cole's arrest and that Cole was cooperative. Voskuhl also testified why a "felony stop" was conducted, and the video reflected that Cole cooperated by placing a hand out of the driver's window, getting himself out of the vehicle, and lying down next to the vehicle. Given the content of the video and the officers' testimony, the trial court did not commit plain error in admitting the video at trial.

{¶ 28} Third, Cole claims that the trial court committed plain error by allowing the State to show a videotape of the statements Cole made while in the back of Officer Stein's cruiser.

{¶ 29} During Officer Stein's direct testimony, Stein testified that Cole made several statements while he (Stein) transported Cole to jail after his arrest. Stein relayed that Cole had stated that he had gotten the keys to the vehicle from a female "crack head" and that the keys were in the vehicle's ignition. Stein indicated that Cole's statements in the cruiser had been recorded and that the video accurately depicted Cole's statements. The prosecutor then asked the court for permission to play the video for the jury. Cole's counsel objected on the basis of hearsay. The trial court overruled the objection.

{¶ 30} The State played approximately nine minutes of the 20-minute video of Cole's being taken to jail. (The unplayed 10 minutes shows the empty interior of Stein's cruiser after Cole has been taken into the jail.) During that nine-minute period, Cole talks

continuously at Officer Stein, and he repeatedly chastises Stein for arresting him for stealing a car when the keys were in the vehicle's ignition. Cole also states that he had received the keys from a woman "crack head." Cole uses the "f-word" repeatedly and calls Stein several unflattering names.

{¶ 31} After the State finished presenting all of its witnesses, Cole's counsel objected to the admission of the video of Cole's statements. Counsel argued that the police officer had testified to Cole's statements, and that the video merely emphasized Cole's "vulgarity" and did not "[do] anything other than prejudice the jury as to what's really going on in the case." The State responded that a defendant should not benefit from his "self-serving profanity" when he "decides to get profane." The court expressed concerns that Cole's extensive use of profanity tended to show his character, which he had not put at issue, and the court took the matter under advisement.

{¶ 32} The following morning, the trial court ruled that the "unsolicited comments" Cole made in the cruiser were relevant, but "the extensive playing of the Defendant's propensity to use offensive or coarse language does nothing more than impugn his character. It doesn't add anything to the case, * * * nothing. That's a [Evid.R.] 404(A)(1) violation. It has no probative value." The court concluded that it would not admit State's Exhibit 29, the DVD of the videos, and the exhibit was not sent to the jury for its deliberations.

{¶ 33} During the court's jury instructions, the court informed the jury that the evidence in the case included the "testimony received from the witnesses, *the exhibits admitted during the trial*, and facts agreed to by counsel." (Emphasis added.) The court did not instruct the jury that it should disregard the video of Cole's statements to Officer

Stein (as opposed to Stein's testimony regarding those statements), and we find no indication in the record that defense counsel requested such an instruction.

{¶ 34} Cole claims that, because the trial court determined that the DVD would not be admitted as evidence, the trial court committed plain error in allowing the jury to view the video during Officer Stein's testimony.

{¶ 35} As an initial matter, we note that Cole's statements to Officer Stein arguably constitute hearsay, the basis for Cole's objection before the video was played. Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

{¶ 36} Certain statements are excluded from the definition of hearsay, including statements of a party-opponent where the statement is offered against that party. Evid. R. 801(D)(2)(a). "It is on that basis that confessions are readily admitted. That does not mean that the reverse, a denial of civil or criminal liability, is likewise admissible. A denial does not have the same inherent reliability as a person's admission against his own interest. It is, or at least very well may be, self-serving. Therefore, a denial remains inadmissible hearsay if the proponent offers the statement to prove the truth of the matter involved." *State v. Beeson*, 2d Dist. Montgomery No. 19312, 2002-Ohio-4341, ¶ 55.

{¶ 37} Cole's statements to Officer Stein that he received the car from a female "crack head" constituted a denial of liability for the theft. The vast majority of his statements to Officer Stein reflected Cole's apparent belief that his arrest for stealing a motor vehicle was unjustified when he had the keys to the vehicle. Cole repeatedly asked the officer if the officer had seen the keys in the ignition. Stoltz and Sourmail had both testified

that the keys to the Torrent were left in the vehicle while it was stored on Sourmail's property, but Cole's comments that he had the keys do not necessarily implicate him in the breaking and entering and the theft, particularly if the jury were to believe that he had gotten the keys from the "crack head."

{¶ 38} Nevertheless, before the video was played for the jury, Officer Stein had already testified, without objection, to the comments Cole had made to him in the cruiser. Other than the obscenities, the video did not contain additional statements by Cole. In addition, Cole vehemently denied that he stole the vehicle and implicated a woman; although arguably hearsay, these statements were exculpatory. It was error for the court to have excluded evidence (the video) which the jury had heard and seen without instructing the jury to disregard it. However, any error in allowing the jury to hear these statements a second time was harmless.

{¶ 39} As for the trial court's allowing the State to play an obscenity-laced video during Officer Stein's testimony, we disagree that the court committed plain error in allowing the jury to view it and then in not instructing the jury to disregard it. Evid.R. 404(A) provides that, in general, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." As stated above, Cole repeatedly used the "f-word" in asserting that he had the keys to the vehicle and that he received the keys from a "crack head." Although the use of curse words may have portrayed Cole in an unfavorable light, we find that Cole's profanity was not used to prove a character trait for which he acted in conformity, nor was his profanity mentioned by the prosecutor in closing argument. We do not find that Cole's use

of curse words, alone, was so prejudicial that the jury's viewing of the video deprived Cole of a fair trial.

{¶ 40}  Cole's fourth assignment of error is overruled.

### III.  Ineffective Assistance of Counsel

{¶ 41}  Cole's fifth assignment of error states:

COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE EVIDENCE DISCUSSED ABOVE AND APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 42}  Cole's fifth assignment of error claims that his trial counsel rendered ineffective assistance by failing to object to the playing of the videos of his arrest and statements to Officer Stein and to Officer Voskuhl's testimony regarding the damage to the vehicle.

{¶ 43}   We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.  *Strickland* at 688.  To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different.  *Id.*

{¶ 44} First, we find no ineffective assistance of counsel in trial counsel's failure to object to Officer Voskuhl's testimony about the source of the damage to the Torrent. Even assuming that Voskuhl was not qualified to testify about the damage and that counsel should have objected, the officer testified that his opinion was based on common sense, not his experience as a police officer, and the jury was presented with numerous photographs of the damaged vehicle from which it could evaluate the credibility of Voskuhl's opinion. Viewing the evidence as whole, we find no reasonable probability that Voskuhl's testimony affected the outcome of Cole's trial.

{¶ 45} We also find no ineffective assistance of counsel due to defense counsel's failure to object to the video of Cole's arrest. As stated above, the video was relevant to show how quickly Voskuhl observed the SUV after leaving Sourmail's Auto Sales, the damage to the vehicle, and that Cole was the driver of the vehicle. Any prejudice that may have resulted from the officers' drawing their weapons while effectuating the stop was minimized by the officers' testimony.

{¶ 46} Finally, although the trial court ultimately decided not to admit into evidence the video of Cole's statements based on Evid.R. 404(A), we cannot conclude that counsel was ineffective in failing to raise that objection at the time it was offered. Counsel did object to the video on hearsay grounds, and we have concluded that Cole's use of curse words did not necessarily warrant exclusion of the video. Moreover, the hearsay, Cole's exculpatory statements, cannot reasonably be found to have been prejudicial to Cole; by viewing the video, the jury repeatedly heard Cole's assertion that he received the car from a "crack head" and Cole's vehement denial that he could have stolen the vehicle since he had the keys. Counsel's failure to object was not deficient and there is no reasonable probability

that the outcome of Cole's trial would have been different had counsel objected.

{¶ 47} Cole's fifth assignment of error is overruled.

## IV. Conclusion

{¶ 48} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., concurring:

{¶ 49} I concur with the majority, but wish to very respectfully express my difference of opinion on an evidentiary issue. I believe Cole's exculpatory statement was not hearsay, because it was not offered by the State to prove the truth of the statement. In addition, the statement was offered by the State and was admissible under Evid.R. 801(D)(2) as an admission of a party opponent.

{¶ 50} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Shortly after the theft of the vehicle, Cole was found driving the vehicle in the immediate vicinity of the theft. When Cole was stopped, he told Officer Stein that he had received the keys and the car from a female "crack head." The State offered this statement as circumstantial evidence of guilt rather than to prove the truth of the statement. Under the circumstances, which include the short time after the theft, Cole's location when apprehended, and the time of night in Piqua, Ohio, the trial court could have reasonably concluded that Cole's statement was implausible and was admissible as circumstantial evidence of guilt. Therefore, Cole's statement was not hearsay.

{¶ 51} In addition, Cole's statement was not hearsay, pursuant to Evid.R.801(D)(2), which provides that admissions of party opponents are not hearsay. "The declaration against interest exception to the hearsay rule under Evid.R.804(B)(3) applies to statements of persons other than parties to the action. The out-of-court statement of a party opponent in the action is an admission, which is governed by Evid.R.801(D)(2)." *State v. Gatewood*, 15 Ohio App.3d 14, 472 N.E.2d 63 (1st. Dist.1984), paragraph one of the syllabus. In this regard, the Twelfth District Court of Appeals has stated that:

> Evid.R. 801(D)(2), likewise, provides that an admission by a party-opponent is not hearsay if "the statement is offered against a party * * *." "While the term 'admission' appears to imply that the out-of-court statement must be a confession or statement against interest, in actuality, any prior statement of a party is admissible providing it is offered against the party at trial." *State v. Baker* (2000), 137 Ohio App.3d 628, 652, 739 N.E.2d 819, quoting *Weissenberger's Ohio Evidence* (1998) 367, Section 801.33. In the case at bar, the state did not attempt to introduce appellant's exculpatory statement, but in fact objected to its admission. Because appellant's exculpatory statement was offered for him and not against him, it did not fall under Evid.R. 801(D)(2). *State v. Wilson*, 12th Dist. Clermont No. CA2001-09-072, 2002-Ohio-4709, ¶ 57.

{¶ 52} In *Baker*, the Twelfth District Court of Appeals concluded that a defendant's prior statements about being a drug-dependent person were properly admitted as admissions of a party opponent under Evid.R. 801(D)(2). *Baker* at 652-653. The statements were used to impeach the defendant. *Id.* at 650.

**{¶ 53}** In view of the preceding discussion, I believe that Cole's statement was not hearsay and was admissible.    Otherwise, I concur with the majority to affirm the judgment.

. . . . . . . . . .

Copies mailed to:

Emily E. Sluk
Cheryl L. Collins
Hon. Robert J. Lindeman