[Cite as *Shaw v. Underwood*, 2017-Ohio-845.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Charles P. Shaw, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-605 |
| v. | : | (C.P.C. No. 13CV-7539) |
| Kyle Underwood, et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

---

D E C I S I O N

Rendered on March 9, 2017

---

**On Brief:** *Charles H. Bendig*, for appellant. **Argued:** *Charles H. Bendig.*

**On Brief:** *Kohrman Jackson & Krantz, LLP, Heather R. Zilka*, and *Alexander J. Ebert* for appellee, Cruizers Auto Sales, Ltd.; *Law Office of Gary L. Grubler*, and *Anna M. Wachtell* for appellee, Linnea Clark. **Argued:** *Anna M. Wachtell.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Charles P. Shaw, appeals a judgment entry of the Franklin County Court of Common Pleas entered on August 12, 2016 following a magistrate administered jury trial. The magistrate made findings of fact in addition to the jury's findings, and the trial court adopted the jury's verdict, apparently considering the magistrate's additional findings of fact in entering final judgment. Because we find no error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 11, 2013, Shaw filed a complaint in the Franklin County Court of Common Pleas seeking compensation for injuries allegedly sustained in three automobile collisions. (July 11, 2013 Compl.) The first of these took place on Hilliard Rome Road on

No. 16AP-605

June 23, 2012. *Id.* at ¶ 1. The second occurred on July 28, 2012 on U.S. Route 40 and the third on January 29, 2013 on Georgesville Road. *Id.* at ¶ 2-3.

{¶ 3} Shaw amended his complaint to add appellee-defendant, Cruizers Auto Sales, Ltd. ("Cruizers"), as the responsible principal for the driver-agent (Kyle Underwood) involved in the first accident. (Mar. 11, 2014 Am. Compl.) Shortly before trial, Shaw voluntarily dismissed Underwood leaving only Cruizers as the defendant of his claims in the first accident. (Jan. 16, 2015 Notice of Voluntary Dismissal.) The parties stipulated to the dismissal of the driver in the third accident as an apparent result of settlement. (Jan. 21, 2015 Stipulated Dismissal.)

{¶ 4} At trial, the remaining defendants, Cruizers and the driver in the second accident (Linnea K. Clark), did not dispute negligence as the causes of their respective accidents on June 23 and July 28, 2012. At the outset of trial, Shaw clarified he was not seeking damages for economic losses and property damage matters had been resolved. (Jan. 26, 2015 Tr. Vol. 1 at 54-55, 57, 63.) The sole issue at trial was whether the two remaining auto accidents proximately caused injuries to Shaw and were substantial contributing causes of the medical expenses he incurred and the pain and suffering he alleged. (Tr. Vol. 1 at 64-65.)

{¶ 5} The trial court ordered a jury trial held before a magistrate. (June 4, 2014 Order of Reference.) At trial, Shaw called five live witnesses: himself, his daughter (Tammy Shaw), his son (Tony Shaw), the person who repaired his truck (Rodney Dum), and a former employer (Chris Carfagna). He also presented the video deposition of his surgeon who had evaluated him and operated on his neck after the accidents (Dr. David Kim). Cruizers called David Tanner (another driver involved in the June 23, 2012 accident on Hilliard Rome Road). Clark called only herself as a witness.

{¶ 6} Shaw testified that he worked his whole life, from his teens, until approximately 2002 as a meat cutter.[1] (Tr. Vol. 1 at 75-80.) In 2002, he fell down the stairs of the business where he was working and suffered certain injuries. (Tr. Vol. 1 at 80-81.) These injuries caused him to obtain surgery in 2004, and shortly after the surgery he suffered a stroke. (Tr. Vol. 1 at 81-82.) He told the jury that he had largely recovered from the stroke by approximately 2006 or 2008 and was exploring the option of starting a

---

[1] Being a meat cutter involves disassembling animal carcasses and sometimes playing a role in slaughtering.

No. 16AP-605

meat shop with his son when, in 2010, his truck was rear-ended. (Tr. Vol. 1 at 82-84, 87-89.) This accident caused him to have a pair of knee surgeries, including a total replacement, and a shoulder surgery. (Tr. Vol. 1 at 88-89.)

{¶ 7} Shaw thereafter explained the circumstances of the two subsequent accidents at trial; he testified that, on June 23, 2012, he was stopped in his Ford Ranger truck waiting to turn left from Hilliard Rome Road into his son's apartment complex. (Tr. Vol. 1 at 96-99.) David Tanner was stopped in a Chevrolet Tahoe SUV behind Shaw. (Jan. 27, 2015 Tr. Vol. 2 at 249-50.) A box truck, driven for Cruizers, failed to brake sufficiently and rear-ended Tanner's SUV, causing a chain reaction of Tanner's SUV rear-ending Shaw's Ford Ranger. (Tr. Vol. 1 at 99-100; Tr. Vol. 2 at 249-50.) Shaw introduced photographs of the damage to the box truck, Tanner's SUV, and Shaw's Ford Ranger. The photos show the box truck front bumper sustained considerable bending. (Shaw Exs. 11/1-11/3.) Photographs of the rear of Tanner's SUV show the rear bumper was quite bent, the lift gate sustained minor dents, and the trailer hitch was pushed in to the extent that it impacted the underslung spare tire. (Shaw Exs. 9/1-9/2, 9/4-9/6.) Tanner's SUV showed comparatively little damage to the front, only a bent bumper. (Shaw Ex. 9/3; Cruizers Ex. G-2.) Shaw's Ford Ranger truck showed a dent in the tailgate and some bending and other damage to the rear bumper and body where Tanner's SUV bumper hit it. (Shaw Ex. 10/2-10/3.) Shaw testified that his truck's frame was bent, and there are photos showing a bent frame following the accident. (Tr. Vol. 1 at 100; Shaw Ex. 10/4.) Another photograph shows that the bed of the truck was cocked at a rearward-canting angle relative to the rest of the truck body following the accident. (Shaw Ex. 10/3.) Shaw also presented photographs showing that the dash mounted radio and center climate-control vents were ejected from the dash. (Shaw Ex. 10/5.)

{¶ 8} The second accident for trial occurred just over one month later on July 28, 2012. Shaw testified that he was traveling on U.S. Route 40 in the right-hand lane when Clark's vehicle drove into the side of his car. (Tr. Vol. 1 at 135-37.) Shaw introduced photographs of damages sustained by both vehicles in this collision. They show that Clark's vehicle was considerably dented on the passenger side front quarter panel, the turn-signal assembly was destroyed, and the front bumper was broken and partially torn from the car. (Shaw Exs. 8/1-8/3.) The photographs show that Shaw's vehicle sustained

No. 16AP-605

a dent in the driver's side front quarter panel and driver's side door as well as a flat tire on the front driver's side. (Shaw Exs. 8/4-8/6, 8/8.)

{¶ 9} Shaw was not immediately evaluated by EMS for either accident. (Tr. Vol. 1 at 101, 124-28, 137, 140-42; Tr. Vol. 2 at 279-80.) Rather, in each case he made arrangements first for his truck to be taken care of and then had a friend drive him to the hospital. *Id.*

{¶ 10} Shaw's testimony was, as a whole, inconsistent and interspersed with minor contradictions and frequent memory lapses. But he consistently testified about the extreme physical exertion required to be a meat cutter and that he routinely suffered pain as a result of a lifetime of hard work. (Tr. Vol. 1 at 76-82, 88, 93-94; Tr. Vol. 2 at 329-30.) Medical records and Shaw's admissions on cross-examination also supported the notion that on several occasions prior to the June and July 2012 accidents he had complained of back and neck pain. (Tr. Vol. 1 at 80, 93-94; Tr. Vol. 2 at 211, 236-37, 260-61, 263, 302, 328-29.) Shaw admitted, for example, that in Spring 2012, shortly before the auto accidents in this case, he was having back problems and receiving injections to attempt to mitigate the issues; he admitted that those injections had reached the limit of their efficacy and he was considering surgery. (Tr. Vol. 1 at 89-92; Tr. Vol. 2 at 327.) He complained of neck pain in 2011 as well as in 2004, shortly after his stroke. (Tr. Vol. 2 at 263, 307, 315-16.) Shaw admitted that after the 2010 accident he complained of both neck and back pain; he stated that those pains dissipated on their own. (Tr. Vol. 2 at 211-12.)

{¶ 11} Shaw also consistently testified that after the June and July accidents in 2012, his pains (particularly his neck pain) grew significantly worse, and his quality of life declined considerably to the point that he was unable to effectively complete basic household chores like washing the dishes. (Tr. Vol. 1 at 93-94, 132; Tr. Vol. 2 at 262-63.) This, he said, led him to have neck surgery with Dr. Kim. (Tr. Vol. 1 at 93-94.) In addition, he testified that following the July 28, 2012 accident, the hospital found he had broken ribs. (Tr. Vol. 1 at 141-42.) Shaw conceded on cross-examination that he had had difficulty breathing and had been coughing for some time before the July 28, 2012 accident, and he admitted that his discharge papers noted that broken ribs can be caused by violent coughing. (Tr. Vol. 2 at 291-92.)

{¶ 12} Both of Shaw's children, Tammy and Tony Shaw, confirmed that, before the 2010 and 2012 accidents, Shaw and Tony had intended to start a meat shop together. (Tr. Vol. 1 at 112, 339-40.) Both Shaw children testified that after the 2012 accidents, their father was no longer himself and seemed to be in pain all the time. (Tr. Vol. 1 at 113-17; Tr. Vol. 2 at 341.) Tammy Shaw admitted, however, that her father had not worked since approximately 2003 and had walked with a cane since 2004. (Tr. Vol. 1 at 123.)

{¶ 13} Shaw called as a witness Carfagna, his prior employer, who did not testify as to any of Shaw's medical conditions, but he confirmed that prior to his accident, Shaw had been a very hard worker. (Tr. Vol. 2 at 364-67.) He also said that there was "[n]othing more physical" than being a meat cutter and added that it is "probably the most thankless job there is in America." (Tr. Vol. 2 at 367.)

{¶ 14} Dum, Shaw's truck mechanic, testified that following the June 23, 2012 accident on Hilliard Rome Road, one leaf spring bolt was sheered off on Shaw's Ford Ranger, another was bent, and the leaf springs were under a great deal of tension. (Tr. Vol. 2 at 347-49.) Dum testified that he reattached the springs but did not attempt to straighten the frame. (Tr. Vol. 2 at 350.) Testimony was not clear, however, about whether the frame of the truck had been damaged in the 2010 accident and repaired or whether it was bent and repaired in the June 2012 accident. (Tr. Vol. 2 at 355-58.)

{¶ 15} Shaw presented a recorded video deposition of Dr. Kim, his neck and spine surgeon. (Tr. Vol. 2 at 371.) Dr. Kim explained that he performed a fusion on Shaw's neck in May 2013 and was aware that another doctor performed a fusion on Shaw's lumbar spine later in Fall 2013. (Jan 19, 2015 Kim Dep. at 21-22, 29-31.) Dr. Kim opined that the accidents in 2012 were a factor in causing Shaw's neck and back injury and that the treatments Shaw received for these injuries were reasonable and appropriate. *Id.* at 25-27, 36-38. However, he also noted that Shaw's neck troubles arose from degenerative disk disease and that aging, thickening of soft tissues, and drying of bone can all cause disk degeneration. *Id.* at 29-34, 47-49. He admitted that in May 2012, before the accidents happened, he had recommended the same lower back surgery that was eventually performed after the accidents later that year. *Id.* at 60-61. He noted that even without the accidents Shaw might have eventually developed the same problems. *Id.* at 55-56. And

No. 16AP-605

he vacillated somewhat as to the causal link between the accidents and Shaw's condition. In Dr. Kim's own words:

> You know, so this -- so it obviously is not a, you know, open and closed case where you say without any doubt that the accident caused the patient's symptoms but, you know, based on this, I don't think there's enough here where, again, for example, if there was a test that showed he had radiculopathy before the accident then I would say, okay, well, I'm not sure then. But since we don't have any evidence of that, I think we can still say within a reasonable degree of certainty that that accident incited, you know, a worsening of his condition. So I think I would probably still stand by with what I said earlier.

*Id.* at 55.

{¶ 16} Cruizers called only Tanner as a witness. Tanner confirmed that he was involved in an accident on June 23, 2012. (Tr. Vol. 2 at 242.) He explained that he was stopped in his SUV, a Chevy Tahoe, behind Shaw's when Tanner was struck from behind. (Tr. Vol. 2 at 249-50.) He said that the impact from behind was severe and bent the trailer hitch of his Tahoe into the spare tire underneath the vehicle. (Tr. Vol. 2 at 251-52, 257.) He testified that he did not feel the subsequent impact with Shaw's vehicle. (Tr. Vol. 2 at 257.) Tanner opined, based on his observation of the back of Shaw's truck before, during, and after the accident, that the accident did not cause damage to Shaw's truck that was not already existing. (Tr. Vol. 2 at 243-44.) He supported this belief in part with the observation that Shaw's bumper had cracks and rust indicating prior damage. (Tr. Vol. 2 at 245.) He noted that his own vehicle had no front damage other than bumper damage and said that Shaw's trailer hitch caused that damage. (Tr. Vol. 2 at 246.)

{¶ 17} Clark called only herself as a witness. Clark testified that she ran into Shaw during a lane change maneuver and described the impact as "less than moderate." (Jan. 28-29, 2015 Tr. Vol. 3 at 439.) She said Shaw told her at the scene that he was fine and repeated the assertion when she called him the next day to check on him. (Tr. Vol. 3 at 440-41.) She explained that due to her training as a home health aid, she asked Shaw some diagnostic questions at the scene of the accident but acknowledged that she was not a medical expert and would not seek to disagree with any expert who might testify. (Tr. Vol. 3 at 447-48.)

{¶ 18} Both sides delivered closing arguments, and the magistrate charged the jury. However, the jury charge was not filed on the record in the case and (at the request of the parties) was not transcribed. (Tr. Vol. 3 at 512.) Ultimately, on January 29, 2015, the jury found in favor of both defendants. (Tr. Vol. 3 at 520-21; Jan. 29, 2015 Verdict Forms.) The jury also answered two interrogatories: "Did Plaintiff Charles Shaw sustain an injury as a result of the automobile accident of July 28, 2012?" (Tr. Vol. 3 at 520.) "Did Plaintiff Charles Shaw sustain an injury as a result of the automobile accident of June 23rd, 2012?" (Tr. Vol. 3 at 521.) The jury answered both of these questions in the negative. (Tr. Vol. 3 at 520-21.)

{¶ 19} The same day, January 29, 2015, the magistrate issued a decision mirroring the jury's findings of fact and conclusions of law with its own findings of fact (apparently to confirm for the trial court his own observations and factual conclusions from the testimony at trial) and conclusions of law. Shaw did not file objections to the magistrate's decision but did, on February 3, 2015, file a motion for a new trial. On February 20, 2015, the magistrate issued a decision, having previously indicated his factual conclusions from the trial testimony, and recommended to the trial court that the motion should be denied. Within the requisite 14 days, on March 3, Shaw filed objections. Because of a delay in transcript preparation, Shaw was permitted to submit supplemental objections, which he did by way of a supplemental memorandum filed on April 28, 2015.

{¶ 20} On August 4, 2015, the Franklin County Court of Common Pleas overruled Shaw's objections. In so doing, the trial court noted that the magistrate need not have prepared a decision following a jury trial because Loc.R. 99.04 of the Franklin County Common Pleas Court, General Division, only requires a report of the jury's findings in jury trials held before magistrates. (Aug. 4, 2015 Decision at 4.) Thus, the fact that Shaw failed to object to the magistrate's initial decision did not preclude Shaw from seeking other relief. *Id.* at 4-5. The trial court reasoned, moreover, that even though the order of reference assigning the case to be heard by the magistrate did not specify or address the magistrate's consideration of post-trial motions, "by their nature, motions for post-trial relief ought to be ruled upon by the judicial officer who conducted the trial." *Id.* at 6. Thus, the trial court judge proceeded to decide the merits of the objections on the

No. 16AP-605

foundation that the magistrate's ruling on the motion for a new trial was a proper exercise of delegated judicial power.

{¶ 21} The trial court recognized Shaw had argued that the jury verdict was not supported by the weight of the evidence and that the magistrate erred in failing to direct a verdict on the issue of proximate causation and, thus, that the jury should have been required to find some amount of damages. *Id.* The trial court noted that on the issue of injuries to Shaw and (though it was not directly at issue in the trial) damages to Shaw's truck, there was evidence on both sides. Some evidence suggested that injuries and damages were proximate results of the two accidents at issue and other evidence suggested the contrary. *Id.* at 7-10. Accordingly, the trial court concluded it could neither find that the magistrate should have directed a verdict on proximate cause nor that the jury had reached a verdict against the weight of the evidence. *Id.* The trial court, therefore, overruled Shaw's objections.

{¶ 22} Four days following the decision, the trial court issued a final judgment entry and from this August 12, 2015 entry, Shaw now timely appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 23} Shaw asserts three assignments of error for our review:

> [1.] The trial court erred in allowing the testimony of a non expert witness concerning that witness's opinion on a critical issue relating to the amount of damage to the plaintiff's vehicle in a motor vehicle collision on June 23, 2012, allowing the jury to develop the impression the plaintiff was lying about the damage to his vehicle.
>
> [2.] The Trial Court erred in failing to grant a directed verdict on both negligence and proximate cause, instructing the jury that some damages must be awarded to the plaintiff based upon the evidence.
>
> [3.] The Trial Court erred in failing to grant a New Trial.

## III. DISCUSSION

### A. First Assignment of Error—Whether the Trial Court Erred in Admitting Tanner's Opinion Testimony About Damage to Shaw's Vehicle

{¶ 24} With regard to expert opinion, the Ohio Rules of Evidence provide in relevant part that:

No. 16AP-605

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

Evid.R. 702.  Conversely, with regard to lay witnesses' opinion testimony, Evid.R. 701 provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶ 25} Generally, "[t]he admission of evidence is within the discretion of the trial court." *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-804, 2014-Ohio-1810, ¶ 36, citing *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38.  "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion."  *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶ 16, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).  Similarly, "an appellate court reviews the decisions of the trial court concerning lay witness testimony for an abuse of discretion."  *State v. Ollison*, 10th Dist. No. 16AP-95, 2016-Ohio-8269, ¶ 39.  Evidentiary determinations "often require implicit determinations about facts (such as preliminary determinations of who said what in what circumstances)" and such determinations and the conclusions flowing from them are entitled to deference. *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18. Yet, an abject failure to apply the relevant rule or state the rule correctly will still be an abuse of discretion because "no court has the authority, within its discretion, to commit an error of law."  *Liggins* at ¶ 18, quoting *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7, citing *Pontius v. Riverside Radiology & Interventional Assocs.*, 10th Dist.

No. 16AP-605

No. 15AP-906, 2016-Ohio-1515, ¶ 23-24; *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70. The questions posed in this case are whether the trial court should have considered the testimony Tanner offered about damage to Shaw's truck to be expert opinion or lay opinion and whether it abused its discretion in allowing it.

{¶ 26} In this case the testimony in question was as follows:

Q. Did you take any photographs following the accident?

A. Yes.

Q. Okay. And what did you take the photographs with?

A. With my phone.

Q. And that's the cellphone you have with you here today?

A. Well, yeah, it's got the same pictures, yes.

Q. Okay. Well, let me show you what we've already marked as Defendant's Exhibit G-1, and this is a photograph of the 1998 Ford Ranger that was being driven by Mr. Shaw. Did you take this photograph?

A. Yes, ma'am.

Q. And this photograph was taken by you. Does it depict damage to Mr. Shaw's vehicle?

A. Not (inaudible) no.

Q. Do you believe that there was damage to Mr. Shaw's vehicle from the accident?

[SHAW'S COUNSEL]: Objection.

THE MAGISTRATE: Basis?

[SHAW'S COUNSEL]: Your Honor, he can state to what he observes -- what he observed, but not -- but he's not an expert.

THE MAGISTRATE: Well, and I don't think the question was asked as an objection[sic]. It was like, do you have an opinion if there was any damage to the rear of the vehicle -- or to the vehicle, that would be a perfectly fine question. It wasn't exactly posed that way. He's entitled to offer his opinion to that.

No. 16AP-605

Go ahead.

BY [CRUIZERS' COUNSEL]:

Q. Do you believe the accident caused any damage to Mr. Shaw's vehicle?

A. Not really, no.

Q. Now, if Mr. Shaw testified that following the accident involving you and Kyle Underwood that the bed of his pickup truck was actually tilted up like a dump truck, do you recall seeing any damage like that?

A. I seen it sitting up like that, but I can't say it was from mine, 'cause you guys see the pictures.

Q. Okay. Now, let me go ahead and zoom in on the bumper itself. Now, if Mr. Shaw has testified that the bumper was replaced before this accident, do you believe that this is a new bumper on this vehicle?

[SHAW'S COUNSEL]: Your Honor, I object.

THE MAGISTRATE: Yeah. Well, I'm going to have to sustain the objection to the form of the question.

BY [CRUIZERS' COUNSEL]:

Q. Do you see damage on this bumper which causes you to believe that this was an older bumper and not a newer bumper?

[SHAW'S COUNSEL]: Objection, leading.

A. On the left side --

THE MAGISTRATE: I'll overrule that objection.

A. On the left side where you see where the crack is where the rust is.

Q. So you're saying over to the left of the license plate, this location here, there's rust?

A. Yes.

Q. So you noticed rust on that bumper?

No. 16AP-605

A. Yeah.

Q. So to you what does that indicate?

A. It means that's a used bumper that's been damaged before.

(Tr. Vol. 2 at 242-45.)

{¶ 27} Tanner was stopped behind Shaw waiting for him to turn left when the accident occurred. (Tr. Vol. 2 at 249-50.) He had the opportunity to observe the rear of Shaw's vehicle before, during, and after the accident. His testimony about the damage he observed to Shaw's vehicle and the rust on the bumper would have been "rationally based on the perception of the witness." Evid.R. 701; *see, e.g.*, *State v. Cole*, 2d Dist. No. 2013 CA 18, 2014-Ohio-233, ¶ 11-12, 20-22 (finding no plain error in the admission of lay opinion testimony that damage to an SUV appeared to be freshly sustained from crashing through a gate based on debris found near the damaged gate and corresponding damage observed to the SUV). The severity of the accident was a factor in determining whether the collision caused Shaw's injury. Information from a witness who was involved in the crash, including his observation of damage he may have seen before, during, and after the accident is relevant and permissible as "helpful to * * * the determination of a fact in issue." Evid.R. 701. We do not find that the trial court abused its discretion in admitting Tanner's testimony into evidence.

{¶ 28} Shaw's first assignment of error is overruled.

### B. Second Assignment of Error—Whether the Trial Court Erred by Failing to Grant a Directed Verdict in Favor of Shaw

{¶ 29} Although both defendants sought directed verdicts at the close of Shaw's case, at no time during trial did Shaw move for a directed verdict. *See* Tr. Vol. 3 at 405-06 (defendants move for directed verdicts). Hence, it cannot have been error for the trial court to have failed to grant Shaw one. *Chemical Bank of New York v. Neman*, 52 Ohio St.3d 204, 207 (1990) (finding that a plaintiff "waived any claim of error in the denial of the directed verdict by failing to renew his motion at the close of all evidence"). Some courts have suggested that such situations may be considered under plain error analysis. *Roberts v. Falls Family Practice, Inc.*, 9th Dist. No. 27973, 2016-Ohio-7589, ¶ 12 ("failure to move for a directed verdict at the close of evidence waives all issues except for plain error review"); *Boyle v. Daimler Chrysler Corp.*, 2d Dist. No. 2001-CA-81, 2002-Ohio-

No. 16AP-605

4199, ¶ 59 ("failure to move for a directed verdict at the close of all evidences waives that issue for purposes of appellate review, except potentially under a plain error analysis"); *see also Gibbons v. Price*, 33 Ohio App.3d 4, 11-12 (8th Dist.1986) (holding that a court may sua sponte direct a verdict). But Shaw has not argued we should find plain error and we decline to do so.

{¶ 30} Shaw's second assignment of error is overruled.

## C. Third Assignment of Error—Whether the Trial Court Erred in Failing to Grant a New Trial

{¶ 31} Shaw's brief states:

> New trial *shall* be granted when there has been irregularity or abuse of discretion which prevented a fair trial; misconduct of the jury or a prevailing party; accident or surprise which ordinary prudence could not have guarded against; inadequate damages; when the judgment is not sustained by the weight of the evidence; when there is an error of law; and within the discretion of the Court for good cause shown. **Ohio Civil Rule 59**

(Italicized emphasis added.) (Emphasis sic.) (Shaw Am. Brief at 17-18.)

{¶ 32} The Ohio Rules of Civil Procedure provide that a "new trial *may* be granted" for some of the reasons Shaw references:

> (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
>
> (2) Misconduct of the jury or prevailing party;
>
> (3) Accident or surprise which ordinary prudence could not have guarded against;
>
> (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
>
> * * *
>
> (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
>
> * * *

No. 16AP-605

> (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.
>
> In addition to the above grounds, a new trial *may* also be granted in the sound discretion of the court for good cause shown.

(Emphasis added.) Civ.R. 59(A)(1),(2),(3),(4),(6), and (9). Consistent with the fact that the rule is permissive (may) rather than mandatory (shall), we generally review decisions on motions for new trials under an abuse of discretion standard. *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-360, ¶ 7, citing *Reeves v. Healy*, 192 Ohio App.3d 769, 2011-Ohio-1487, ¶ 18 (10th Dist.). However, it is also true that "no court has the authority, within its discretion, to commit an error of law." *Akbari* at ¶ 7. Thus we have also observed that " 'when the basis of the motion [for a new trial] involves a question of law, the de novo standard of review applies, and when the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies.' " *Frash* at ¶ 7, quoting *Dragway 42, L.L.C. v. Kokosing Constr. Co.*, 9th Dist. No. 09CA0073, 2010-Ohio-4657, ¶ 32.

{¶ 33} Shaw argues that a new trial should have been granted because Tanner was permitted to offer an expert opinion despite the fact that he was not qualified as an expert. (Shaw Am. Brief at 18.) We have already addressed this. *See supra* ¶ 24-27. Tanner offered an opinion based on his lay observation of Shaw's truck before, during, and after the accident. This opinion was rationally based on his perception and helpful both to understanding his testimony and determining the extent to which Shaw's truck was damaged. Evid.R. 701. The damage to Shaw's truck (or lack thereof) was informative as to the likelihood that Shaw sustained injuries in the crash and that was "a fact in issue." *Id.*

{¶ 34} Shaw also argues that one of the defense counsel misstated Dum's testimony in closing argument. (Shaw Am. Brief at 18.) Shaw is not specific as to the nature or source of this alleged misstatement, and our review of the closing arguments and Dum's testimony reveals no statement that seems to us to rise to the level of misconduct justifying a new trial. Civ.R. 59(A)(2).

No. 16AP-605

{¶ 35} Shaw asserts that the jury should have favorably considered evidence that emergency room doctors found injuries to Shaw within "several hours" of the collision and the testimony of Shaw's family members. (Shaw Am. Brief at 18-19, 22.) Shaw also argues that we should find that the jury's holding (that Shaw was not injured by the two Summer 2012 accidents) was not supported by competent evidence because the only doctor to testify, Dr. Kim, testified that the accidents were a factor in Shaw's condition and need for surgery. (Shaw Am. Brief at 24-26.) However, our review of the transcript in this case shows that while there was significant evidence that Shaw was injured in these accidents, there was also evidence (including from Shaw himself) that some or all of the injuries predated the accidents. *See supra* ¶ 6-17. Even Dr. Kim was somewhat ambivalent about his testimony as to causation, admitting that Shaw's neck problems involved a degenerative condition and that he had recommended surgery to Shaw even prior to the 2012 accidents. *See supra* ¶ 15. Accordingly, we discern no abuse of discretion in the failure to grant a new trial on these grounds.

{¶ 36} Shaw also argues that the defendants' attorneys were permitted to ask repetitive questions of Shaw and repeatedly elicit damaging answers with the result that such matters were overemphasized before the jury. (Shaw Am. Brief at 22-23.) Ohio Evidence Rule 403(B) permits a court to exclude otherwise relevant evidence if its probative value is substantially outweighed by concerns arising from the "needless presentation of cumulative evidence." In arguing abuse of discretion, Shaw directs this Court to an instance in which his attorney objected to one defense counsel asking questions similar to those which the other defense attorney had posed. *Id.*, citing Tr. Vol. 2 at 323. The magistrate was initially inclined to allow repeated questioning but ultimately told the defense to avoid being repetitive:

> [SHAW'S COUNSEL]: Your Honor, I believe this area has been asked and covered. I would object to these questions. They've been asked and answered as to his visit.
>
> THE MAGISTRATE: Well, you know, I'm having a hard time remembering exactly what individual things were asked about. I am not confident that I can say that [Clark's counsel] has asked these questions. I know [Cruizers' counsel] may have. But I think [Clark's counsel] has the right to do it again if she cares to.

No. 16AP-605

> [SHAW'S COUNSEL]: All right, Your Honor.
>
> THE MAGISTRATE: But I will ask her to try not to plow the same field.
>
> [CLARK'S COUNSEL]: I will represent to Your Honor that I've attempted to limit questions to what hasn't been asked before.
>
> THE MAGISTRATE: You don't have to argue with me, just try not to go over the same stuff.
>
> [CLARK'S COUNSEL]: I'm trying.

(Tr. Vol. 2 at 323-24.)  Shaw does not direct us to any actual examples of the same questions being repetitively asked over his objection.  He has not demonstrated abuse of discretion, nor do we find the magistrate or the trial court abused their discretion in not granting a new trial on this ground.

{¶ 37}  Shaw argues that a new trial should have been granted because the jury was aware that Shaw's bills had been paid by Medicare.  (Shaw Am. Brief at 24.)  However it was Shaw himself who repeatedly mentioned insurance and Medicare during the trial.  (Tr. Vol. 1 at 165, 187-89; Tr. Vol. 3 at 390.)

{¶ 38}  Shaw also argues that the jury inappropriately became aware that he had been involved in litigation involving two accidents not at issue in the trial.  (Shaw Am. Brief at 24.)  Shaw does not argue or explain how or why this was inappropriate in this case.  Since the stipulated issue for trial was proximate causation, the existence of litigation and details concerning other accidents were relevant to determining which of the accidents, if any, caused Shaw's injuries.  (Tr. Vol. 2 at 197-200.)  Shaw's sworn deposition statements in connection with the 2010 accident were relevant to whether the 2012 accidents caused him injury.  (Tr. Vol. 2 at 206-12.)

{¶ 39}  Finding no abuse of discretion in the trial court's failure to grant Shaw a new trial, we overrule Shaw's third assignment of error.

## IV.  CONCLUSION

{¶ 40}  The trial court did not err in admitting the lay opinion of a witness who was also involved in an automobile accident regarding his perception before, during, and after the accident concerning damage caused to a plaintiff's vehicle by an accident.  There was no error in not granting a motion for directed verdict that was not made.  Based on the

No. 16AP-605

circumstances of this case and in light of no argument of plain error to avoid waiver, we decline to find it.  There was no error in denying a motion for a new trial because evidence was properly before the jury which could have permitted it to conclude that Shaw's injuries were not sustained in the Summer 2012 vehicle collisions but were preexisting. We overrule all three of Shaw's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

————————