[Cite as *Columbus v. Swanson*, 2020-Ohio-357.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-524 |
| v. | : | (M.C. No. 17TRC-116943) |
| Victoya Swanson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 4, 2020

**On brief:** *Zach Klein*, City Attorney, *Bill R. Hedrick,* and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Jeremy A. Roth*, for appellant. **Argued:** *Jeremy A. Roth.*

APPEAL from the Franklin County Municipal Court

BRUNNER, J.

{¶ 1} Defendant-appellant, Victoya Swanson, appeals from a judgment of the Franklin County Municipal Court entered on June 4, 2018 following a jury verdict, convicting Swanson of OVI according to Columbus City Code 2133.01(A)(1)(d). Swanson also appeals denial of leave to file a motion to suppress and the trial court's pretrial exclusion of an expert witness, Dr. Robert Belloto. The trial court did not err in excluding the testimony of Dr. Belloto or in refusing to permit Swanson to file a successive motion to suppress after her first motion was withdrawn. We decline to find that trial counsel rendered ineffective assistance in withdrawing the first motion to suppress. And based on the evidence introduced at trial, Swanson's conviction was sufficiently supported and not against the manifest weight of the evidence. We therefore overrule all of Swanson's assignments of error and affirm the trial court's judgment.

2020-Ohio-357.docx

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  It is undisputed that, on March 5, 2017, at approximately 2:30 a.m., a Franklin County Sheriff's Office patrol vehicle (an SUV) collided with the driver's side rear of a sedan driven by Swanson at the intersection of Cleveland Avenue and East Weber Road. Following an admission that Swanson had consumed some alcohol earlier in the evening, officers on the scene requested that she perform field sobriety tests and she agreed to do so. Following completion of the field sobriety tests, she was arrested and transported to the headquarters of the Columbus Police where she submitted to a breath test.  The breath test result was 0.118.

{¶ 3}  As a consequence of these undisputed facts, Swanson was issued a ticket charging that she ran a red light and operated a vehicle while under the influence of alcohol or with a forbidden concentration of alcohol in her system, in violation of Columbus City Ordinances 2113.03(c)(2), 2133.01(A)(1)(a), and 2133.01(A)(1)(d). (Mar. 5, 2017 Ticket.) Swanson pled not guilty on March 10, 2017.  (Mar. 10, 2017 Plea Form.)  On April 27, 2017, her counsel filed a motion to suppress the results of the breath test (among other things) alleging that the police had generally failed to comply with unspecified administrative code provisions governing the administration of breath tests.  (Apr. 27, 2017 Mot. to Suppress at 3-5.)  The plaintiff-appellee, City of Columbus, opposed the motion, attacking each potential basis for excluding the results of the test.  (June 23, 2017 Memo. Contra at 7-18.) Approximately one and one-half month later, for reasons not reflected in the record, Swanson's counsel withdrew the suppression motion.  (Aug. 14, 2017 Entry Withdrawing Mot.)

{¶ 4}  On January 28, 2018, the prosecution sought a *Daubert*[1] hearing to limit or entirely exclude the testimony of Swanson's proposed expert, Dr. Robert Belloto.  (Jan. 26, 2018 *Daubert* Mot.)  Swanson opposed the exclusion.  (Feb. 4, 2018 Memo. in Opp.)  On February 12, the trial court held a hearing on the matter.  (Feb. 12, 2018 Hearing Tr., filed Aug. 17, 2018.)

{¶ 5}  At the *Daubert* hearing, Dr. Belloto testified to his numerous degrees, considerable experience, publications, and presentations that qualified him to offer opinions on drugs (including alcohol) and the science of pharmacokinetics.  *Id.* at 5-11; *see*

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

*also* City's Hearing Ex. 2 (Dr. Belloto's resume). He initially indicated that he used a calculation known as a "Widmark calculation" to offer an opinion about whether the breath test result in this case was consistent with the amount Swanson reported having drunk. (Feb. 12, 2018 Hearing Tr. at 12-13; City's Hearing Ex. 1 at 1.) However, Dr. Belloto then admitted that he did not use a classic Widmark calculation, but rather utilized an unspecified series of pharmacokinetic calculations. (Feb. 12, 2018 Hearing Tr. at 13, 27-30.) He further admitted that he had not stated in his report what sources of information he relied on and that, if the information on which he relied was wrong, his conclusions would be wrong to the same degree. *Id.* at 17-19, 23-24, 40; City's Hearing Ex. 1. In short, he reached a result using calculations he did not disclose and based on data and assumptions that he also did not disclose. (Feb. 12, 2018 Hearing Tr. at 23-24, 27-30, 31-34, 36-37, 40.) Based on this undisclosed methodology, he opined that belching due to gastroesophageal reflux disease ("GERD") or from the presence of trapped alcohol behind grillz[2] in Swanson's mouth at the time of the test (or some combination of the two) was the cause of Swanson's high test result. *Id.* at 61-62. But he agreed that the incongruity between his calculations and the test result could also be explained by Swanson lying about how much she had to drink. *Id.* at 75-76.

{¶ 6} Although Dr. Belloto offered some opinions in his report about the field sobriety tests administered to Swanson, whether or not she appeared drunk, and the reliability of breath testing in general, the defense conceded that it was not attempting to offer an expert opinion on those topics. *Id.* at 85-86. Even with that limitation, the trial court excluded Dr. Belloto as a witness entirely. It found that Dr. Belloto could qualify as an expert witness but stated that it found his testimony confusing and self-contradictory. *Id.* at 91-93. The trial court accordingly excluded the testimony under Evid.R. 403(A).[3] (Feb. 12, 2018 Hearing Tr. at 91-93.)

{¶ 7} Approximately one month later, on March 20, 2018, Swanson filed a motion for leave to file another motion to suppress.[4] (Mar. 20, 2018 Mot. for Leave.) By entry

---

[2] Grillz have been described as a form of jewelry that are worn for decoration over the teeth.
[3] "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
[4] The motion for leave indicated that a copy of the proposed motion to suppress was attached, but the record received from the trial court does not include a copy of the motion or other evidence indicating that it was ever attached to the motion.

three days later, the trial court denied Swanson leave to file a renewed motion to suppress. (Mar. 23, 2018 Entry.)  Trial commenced three days after that on March 26, 2018.

{¶ 8}    At trial, eight witnesses testified: the sheriff's deputy who hit Swanson's car; the officer who administered the field sobriety tests and transported Swanson; the officer who administered the breath test; an officer who first spoke to Swanson at the scene of the crash; Swanson's daughter; the prisoner being transported in the police vehicle involved in the collision; a new expert witness on Swanson's behalf; and Swanson herself.  Because Swanson presents a number of assignments of error, including sufficiency of the evidence and manifest weight, a brief review of the testimony at trial is necessary.

{¶ 9}    Deputy Daniel Adkins testified that he was traveling West on Weber Road on March 5, 2017, when a vehicle traveling South on Cleveland Avenue collided with him.  (Tr. at 144-45.)[5]  He insisted that he had a green light and related that allegation to officers who arrived on the scene.  (Tr. at 156, 159-60.)  However, he admitted that the damage to his vehicle was on the front while the damage to Swanson's was on the rear driver's side.  (Tr. at 156-57.)  According to Adkins, a system-wide fault in the video recording service for the Sheriff's Office resulted in the accident not being recorded by the camera in his cruiser.  (Tr. at 152-53.)

{¶ 10} Officer Harry "Brian" Dorsey, testified that he was working as a Driving Impaired Criminal Enforcement ("DICE") officer on March 5, 2017 for the Columbus Police Department and that he was called to the scene.  (Tr. at 164-66, 169-72.)  He testified that Swanson smelled slightly of alcohol and had bloodshot glassy eyes when he encountered her.  (Tr. at 172.)  Dorsey said she was cooperative in taking the tests but admitted that she disclosed some problems with one eye and that, despite the cold conditions, she elected to take the tests barefoot (rather than in her high-heeled boots).  (Tr. at 172, 183, 191.)  He testified that he observed enough clues on all three standardized tests (Horizontal Gaze Nystagmus ("HGN"), One Leg Stand ("OLS"), and Walk and Turn ("WAT")) to develop probable cause that Swanson was intoxicated.  (Tr. at 185-208.)  A video of the tests was also played for the jury.  (Tr. at 175-77; City's Ex. 8 at 03:16:45-03:26:20.)  Based on the poor performance on the tests and other circumstances, Officer Dorsey placed Swanson

---

[5] The trial transcript was filed in two consecutively paginated volumes on August 17, 2018 and is cited herein solely by page number.

under arrest and transported her to police headquarters to take a breath test. (Tr. at 207, 213-15.) He testified that he checked Swanson's mouth before driving her downtown to make sure she did not have any foreign substances in there that might interfere with the test and did not see any anything of note. (Tr. at 211-17.) He stated he did not notice Swanson belching or burping at any point. (Tr. at 212-13.)

{¶ 11} Dorsey testified that, after waiting 20 minutes and observing Swanson, another officer conducted the breath test. (Tr. at 216-17, 246-47, 258.) Swanson's result was 0.118. (Tr. at 253.) Swanson expressed surprise at the result and indicated that she was going to go to the hospital to request a blood draw with which to dispute the breath result. (Tr. at 254-255.) Dorsey offered to transport her to the hospital, but Swanson indicated that she would have a family member take her. *Id.*

{¶ 12} Officer Alan Doerfler testified next. He verified that he was a Columbus Police Officer, and certified to do breath testing at the relevant time. (Tr. at 262-64; City's Ex. 10.) He said he checked Swanson's mouth prior to the test and did not notice anything amiss. (Tr. at 275-76.) Had he seen any foreign object in her mouth he would have started the observation time over and not proceeded immediately with the test. (Tr. at 276-77.) He admitted that, before having Swanson take the test, the testing machine reported radio frequency interference, which, he said, happens if an officer forgets to turn his radio off before approaching the machine. (Tr. at 269, 277-78.) He also admitted that he did not personally observe Swanson for 20 minutes prior to the test and relied on Dorsey's observations to meet that criterion. (Tr. at 294-95.) But in the end, he said, everything appeared to work properly and a valid test result of 0.118 was obtained from Swanson. (Tr. at 278-80; City's Ex. 12.)

{¶ 13} The final officer to testify was Officer Edward Prime, of the Columbus Police. (Tr. at 308.) Prime testified that he interviewed Swanson at the scene and noted glassy bloodshot eyes as well as an odor of alcohol. (Tr. at 312.) He said she admitted to having consumed a "few" drinks and consented to perform field sobriety tests. *Id.* He agreed that he asked her about whether she was injured but indicated that he did not remember her response. (Tr. at 321-22.)

{¶ 14} Swanson's daughter was the first witness to testify for the defense. (Tr. at 330.) She testified that she was with her mother on the night of the collision and that they

had one glass of wine each around 5 or 6 p.m. while watching television. (Tr. at 335-37.) The glass of wine was eight ounces or less. (Tr. at 342.) She fell asleep at some point in the evening while watching television and testified that she had no personal knowledge of what happened to her mother after that point. (Tr. at 345-48.)

{¶ 15} The next witness to testify for the defense was Jamal Yusuf, the prisoner being transported by Deputy Adkins at the time of the collision. (Tr. at 348.) Yusuf testified that he was handcuffed in the back seat of the sheriff's SUV at the time of the accident. (Tr. at 353-54.) He said that he could see the traffic signal through the mesh divider between the front and rear seats and the light was red in their direction when they entered the intersection. (Tr. at 358, 363-64.) After the accident, the police took him to the hospital, but no one asked him what happened. (Tr. at 359.) Yusuf admitted that he was recently released from prison where he had been incarcerated for a parole violation in connection with a prior conviction for robbery. (Tr. at 351-52.)

{¶ 16} Swanson testified next. (Tr. at 373.) Swanson testified that she had approximately eight ounces of wine with some fruit in it at around 9 p.m. and then fell asleep watching television. (Tr. at 379-84.) She woke up some time later and decided to go out dancing, ultimately leaving the house at approximately 2:30 a.m. (Tr. at 384.) Swanson said that as she drove through a green light, Adkins' cruiser, not running lights or siren, hit her on the driver's side near the back bumper, totaling her car. (Tr. at 413-15.) She said that she told officers and medics that her back and knee hurt but declined to be transported to the hospital because she was concerned about the cost of the ambulance ride and preferred to have her boyfriend drive her (which he later did). (Tr. at 416-19.)

{¶ 17} Swanson testified that she sometimes wears decorative covers on her lower teeth known as "grillz," and wore them when she drank the glass of wine. (Tr. at 388, 392.) She also testified that she suffers from reflux and belching, that she spit up a bit shortly after the accident, and that she then chewed gum to get the taste out of her mouth. (Tr. at 405-07, 422-23.) While she was talking to the medics, she removed her grillz but later put them back in after being patted down incident to arrest and left them in for the remainder of the night, including during the breath test. (Tr. at 423-24, 429-30, 437-38.) She testified that Officer Doerfler did not check her mouth before administering the test. (Tr. at 436-37.) She also related that she was having reflux and burping problems that evening,

including in the police car and while sitting waiting to give a breath sample. (Tr. at 432-33, 437.)

{¶ 18} She stated that she was surprised by the breath test result and went to the hospital to request a blood draw test to dispute the breath test. (Tr. at 438.) However, the personnel at the hospital refused to do the testing because she had not been brought in by an officer and they did not see signs that she was intoxicated. (Tr. at 439.)

{¶ 19} Before the final witness testified, the parties stipulated that, at the time of the incident, Swanson weighed 162 pounds. (Tr. at 495.) Based on that stipulation, and a lengthy hypothetical posed to him, an expert witness, Dr. Harry Plotnick, testified for the defense. (Tr. at 502, 508-10.) Dr. Plotnick, who was qualified as an expert on the effects of alcohol on the human body and the measurement and prediction thereof, computed a blood alcohol level based on Swanson's weight, sex, age, and the supposition that she had an 8-ounce glass of wine at approximately 9:40 p.m. (Tr. at 510-11.) In reviewing his computation for the jury, Dr. Plotnick realized that he erroneously assumed that Swanson was tested about two hours earlier than the actual test time. (Tr. at 511-15.) However, he said the only impact that error would have had is that Swanson's calculated alcohol level would have been even lower two hours later. *Id.* In short, the expert testified that the amount measured by the breath testing equipment was substantially higher than you would expect to see in a 164-pound[6] female who had a single 8-ounce glass of wine more than 6 hours before. (Tr. at 510-15.)

{¶ 20} Assuming the testing machine was working properly, there were, he said, two possible explanations for the high reading: either there was some source of alcohol entering the breath machine other than the person's lung air or the person lied about how much she had to drink. (Tr. at 515-16.) Initially, Dr. Plotnick indicated that alcohol trapped in the mouth through the presence of a foreign object could be such a source and so too could air burped from the stomach to comingle with lung air. (Tr. at 516.) However, after cross-examination, he admitted that if the grillz were removed at some point between drinking and the test, his opinion as to one of those causes would be altered. (Tr. at 525.) He then admitted on redirect that he did not think that belching or burping up stomach air, would

---

[6] Despite the stipulation of a 162-pound weight, Doctor Plotnick and the questioning attorneys repeatedly referred to Swanson as weighing 164 pounds. (Tr. at 509, 511, 512, 516.)

by itself, account for the high breath test result in someone who had drunk alcohol six hours earlier.  (Tr. at 513-14, 526.)

{¶ 21}  Ultimately, based on this and the evidence en toto introduced and admitted at trial, the jury found Swanson "not guilty" of driving while under the influence of alcohol under Columbus City Code 2133.01(A)(1)(a), but "guilty" of driving with a concentration of greater than 0.08 of a gram of alcohol per 210 liters of breath as prohibited by Columbus City Code 2133.01(A)(1)(d).  (Apr. 3, 2018 Verdict Forms.)  The trial court also found Swanson "not guilty" of the minor misdemeanor offense of running the red light, as prohibited by Columbus City Code 2113.03(C)(2). (Tr. at 574.)  The trial court imposed sentence in an entry filed on June 4, 2018. (June 4, 2018 Sentencing Entry.)

{¶ 22}  Swanson now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 23}  Swanson assigns four errors for our review:

> 1.  The trial court abused its discretion when it sustained the [City]'s Motion in Limine to exclude Appellant's defense expert testimony from Dr. Belloto pursuant to Evid. R. 403(a).
>
> 2.  The trial court abused its discretion when it overruled Appellant's March 20, 2018 motion for leave to file motion to suppress.
>
> 3.  Appellant did not receive effective assistance of counsel in violation of her rights under the Ohio Constitution and the 14th and 6[th] amendments to the United States Constitution.
>
> 4.  The trial court erred when it entered judgment against Appellant when the evidence was insufficient to sustain the convictions and was against the manifest weight of the evidence.

## III.  DISCUSSION

### A.  First Assignment of Error – Whether the Trial Court Erred in Excluding the Testimony of Dr. Belloto

{¶ 24}  Generally, "[t]he admission of evidence is within the discretion of the trial court." *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-804, 2014-Ohio-1810, ¶ 36, citing *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38.  "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023,

¶ 16, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). "Evidentiary determinations 'often require implicit determinations about facts (such as preliminary determinations of who said what in what circumstances)' and such determinations and the conclusions flowing from them are entitled to deference." *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845, ¶ 25, quoting *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18. "Yet, an abject failure to apply the relevant rule or state the rule correctly will still be an abuse of discretion because 'no court has the authority, within its discretion, to commit an error of law.' " *Shaw* at ¶ 25, quoting *Liggins* at ¶ 18; *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7, citing *Pontius v. Riverside Radiology & Interventional Assocs.*, 10th Dist. No. 15AP-906, 2016-Ohio-1515, ¶ 23-24; *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70.

**{¶ 25}** In this case, the trial court properly referenced Evid.R. 702 and 704 and acknowledged that Dr. Belloto would qualify as an expert, on the basis of his considerable experience and education. (Feb. 12, 2018 Hearing Tr. at 91-93.) Yet, after hearing his testimony and reviewing his report (which was introduced as an exhibit during the *Daubert* hearing), the trial court concluded that Belloto's opinions and the manner in which they were expressed, ran afoul of Evid.R. 403(A). *Id.* Evid.R. 403(A) mandates exclusion of evidence where, although the evidence is relevant, its probative value is nonetheless "substantially outweighed by the danger * * * of confusion of the issues."

**{¶ 26}** As did the trial court, we reviewed Dr. Belloto's testimony and written report and we recognize bases for concern: Dr. Belloto did not disclose his data, his assumptions, or his methodology in either his testimony or his report. (Feb. 12, 2018 Hearing Tr. at 23-24, 27-30, 31-34, 36-37, 40; City's Hearing Ex. 1.) Instead, he testified multiple times that such were merely "impl[ied]" by his conclusions. (Feb. 12, 2018 Hearing Tr. at 24-26, 28-31.) We are unable to make the implications Dr. Belloto suggests and apparently neither was the trial court. *Id.* at 91-93. We hold that the trial court did not abuse its discretion in factually finding that Dr. Belloto's testimony posed a substantial danger of confusion of the issues. Given that circumstance, the trial court did not err as a matter of law in applying or interpreting Evid.R. 403(A) as requiring exclusion of the confusing testimony.

**{¶ 27}** We overrule Swanson's first assignment of error.

**B. Second Assignment of Error – Whether the Trial Court Erred in Failing to Permit Swanson to File a Second Motion to Suppress**

{¶ 28} The Ohio Rules of Criminal Procedure recognize that a defendant may raise suppression as an issue before trial. Crim.R. 12(C)(3). Crim.R. 12 also provides some guidance on the filing of pretrial motions:

> (D) Motion date. All pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.

Crim.R. 12(D). In some cases, the basis for a suppression motion remains unknown until after the deadline has passed. Thus, Crim.R. 12(D) permits a trial court "in the interest of justice" to "extend the time for making pretrial motions"; discovery of the grounds for a suppression motion after the 35-day deadline justifies the conclusion that extending time may be in the interest of justice. *State v. Sargent*, 2d Dist. No. 3042, 1994 WL 450079, 1994 Ohio App. LEXIS 3666, in passim (Aug. 17, 1994) (finding that a trial court abuses its discretion when it refuses to consider an untimely motion to suppress filed shortly after receiving discovery); *see also, e.g.*, *State v. Jones*, 8th Dist. No. 93114, 2010-Ohio-2777, ¶ 13-16; *State v. Wisniewski*, 8th Dist. No. 74980, 1999 WL 980596, 1999 Ohio App. LEXIS 5062, *10 (Oct. 28, 1999).

{¶ 29} As to the second motion to suppress, no argument was made that it could not have been filed sooner (and one was filed previously but was withdrawn). (Mar. 20, 2018 Mot. for Leave at 2; Apr. 27, 2017 Mot. to Suppress.) Rather, in the second motion to suppress, successor counsel had reviewed the case and essentially reconsidered predecessor counsel's decision to withdraw the motion to suppress. (Mar. 20, 2018 Mot. for Leave at 2.) The second motion contained no explanation of what the particular issue was that revived the desire to file a motion to suppress. *Id.* Nor was there argument in support of the motion for leave that the issue was not or could not have been asserted in the previous but withdrawn motion to suppress. *Id.* In short, the motion for leave to file the second motion to suppress did not provide a basis for the trial court to conclude that extending the time in which to file a motion to suppress would have been in the "interest[s] of justice." Crim.R. 12(D); Apr. 27, 2017 Mot. to Suppress at 3-5; June 23, 2017 Memo. Contra at 7-18; Aug. 14, 2017 Entry Withdrawing Mot. Under these circumstances, we do

not find that the trial court erred in failing to extend the time limit in the "interest of justice" to permit the filing of a second motion to suppress.  Crim.R. 12(D).

{¶ 30}  We overrule Swanson's second assignment of error.

## C. Third Assignment of Error – Whether Swanson Received Constitutionally Effective Assistance of Counsel

{¶ 31}  Ineffective assistance of counsel claims are assessed using the two-pronged approach set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  "In evaluating counsel's performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' "  *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 37, quoting *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  " 'To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' "  *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 42, quoting *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus; *see also Strickland* at 694.

{¶ 32}  Swanson argues that this standard is met in this case by her first counsel's decision to file and then withdraw the first motion to suppress.  (Swanson's Brief at 22-23.) Essentially, Swanson argues that she was only convicted of driving with a forbidden level of alcohol on her breath and, thus, withdrawing a motion that might have resulted in the exclusion of the breath test was surely prejudicial and strategically unjustifiable.  *Id.* However, those arguments are premised on the assumption that a motion to suppress the breath test would likely have been successful.  The appellate record does not justify this premise.

{¶ 33}  The initial suppression motion asserted unspecified general failures to comply with administrative code provisions governing the administration of breath tests and successor trial counsel did not file (even to preserve it for the appellate record) an updated motion.  (Apr. 27, 2017 Mot. to Suppress at 3-5; Mar. 20, 2018 Mot. for Leave.)

Thus, we cannot now evaluate the merits of Swanson's unknown argument. It was after the City opposed the original motion and attempted to address each potential basis for exclusion that Swanson's predecessor counsel withdrew the suppression motion. (June 23, 2017 Memo. Contra at 7-18; Aug. 14, 2017 Entry Withdrawing Mot.) It is theoretically possible that Swanson's counsel made an error in judgment in withdrawing the motion and that the motion would have succeeded. But it could also be true that the City's opposition showed the flaws in each of the bases on which Swanson might have pursued her suppression argument, and that Swanson's counsel made a wise strategic decision to withdraw the motion. The appellate record is insufficient to choose between these alternatives and thus we are left with the "strong presumption that counsel's conduct" fell within the "wide range of reasonable professional assistance." *See, e.g.*, *Strickland* at 689.

{¶ 34} Finding no basis on which to find that counsel was ineffective, we overrule Swanson's third assignment of error.

### D. Fourth Assignment of Error – Whether Swanson's Conviction was Insufficiently Supported or Against the Manifest Weight of the Evidence

{¶ 35} In her fourth assignment of error, Swanson alleges that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

> Weight of the evidence concerns "the inclination *of the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. * * * . Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387; *Black's Law Dictionary* 1594 (6th Ed.1990). In manifest weight analysis, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 36} In contrast, sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley* at ¶ 11, quoting *Thompkins* at 386, quoting *Black's* at 1433. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 37} The City of Columbus' OVI ordinance provides, in relevant part:

> (A)

> (1) No person shall operate any vehicle, streetcar, or trackless trolley within this City, if, at the time of the operation, any of the following apply:

> * * *

> (d) The person has a concentration of eight-hundredths (0.08) of one (1) gram or more but less than seventeen-hundredths (0.17) of one (1) gram by weight of alcohol per two hundred ten (210) liters of the person's breath.

Columbus City Code 2133.01(A)(1)(d). It is undisputed in this case that Swanson was operating a vehicle when her vehicle collided with that operated by Deputy Adkins. Swanson's argument instead focuses on whether the evidence was sufficient and weighty on the question of whether she had a prohibited concentration of alcohol in her breath. (Swanson's Brief at 26-27.)

{¶ 38} In this case, although there was a radio frequency interference readout on the breath test machine, no evidence at trial raised any serious question as to the reliability of the machine itself and it ultimately produced a facially valid result. (Tr. at 269, 277-78; City Ex. 12.) The officers testified that they waited the requisite interval and checked Swanson's

mouth prior to testing. (Tr. at 211-17, 258, 275-76, 294-95.) Swanson and her daughter were consistent in testifying that Swanson only had a single glass of wine (though they differed on what time that occurred). (Tr. at 335-37, 379-84.) But even Swanson's own expert opined that, if Swanson was telling the truth about how much wine she had and when she had it, it would have been fully absorbed from her gastrointestinal tract within one hour (casting doubt on her claim regarding belching alcohol from her stomach by that point). (Tr. at 513-14, 526.) Thus, he opined that the test result could not be explained solely as a consequence of belching or reflux. *Id.* He also testified that, if Swanson removed her grillz between drinking wine and being tested (as she said she did), the grillz could not explain the test result. (Tr. at 525.) According to even Swanson's own expert, that left only one remaining explanation for the test—that Swanson drank more than she admitted. (Tr. at 515-16.)

{¶ 39} Given the facts as related here, Swanson's conviction under Columbus City Code 2133.01(A)(1)(d) was neither insufficiently supported nor contrary to the manifest weight of the evidence. We overrule Swanson's fourth assignment of error.

## IV. CONCLUSION

{¶ 40} We do not find that the trial court erred legally or abused its discretion in excluding the testimony of Dr. Belloto or in refusing to permit a successive motion to suppress to be filed after the first was withdrawn. We also do not find the record sufficient to conclude that trial counsel rendered ineffective assistance in withdrawing the first motion to suppress. Finally, based on the evidence introduced at trial, Swanson's conviction was sufficiently supported and not against the manifest weight of the evidence. We therefore overrule all of Swanson's assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BEATTY BLUNT and NELSON, JJ., concur.